UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CYNTHIA ROPER, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>PERDUE FARMS )<br>)<br>Defendant. ) | CV419-230 |

**ORDER AND REPORT AND RECOMMENDATION**

Plaintiff, in response to this Court's prior Order, *see* doc. 4, has filed an amended *pro se* complaint alleging employment discrimination. Doc. 5. As the Court has granted her request to pursue her case *in forma pauperis* (IFP), doc. 4, it now screens the allegations of the amended complaint pursuant to 28 U.S.C. § 1915(e)(2).[1]

**I. BACKGROUND**[2]

Plaintiff Cynthia Roper alleges that she was "harassed and single[d] out" by her former supervisor at Purdue Farms when she was

---

[1] "[U]nder § 1915(e), district courts have the power to screen complaints filed by all IFP litigants, prisoners and non-prisoners alike." *Taliaferro v. United States*, 677 F. App'x 536, 537 (11th Cir. 2017), *cert. denied,* 138 S. Ct. 338 (2017).

[2] As it must at this stage in the proceedings, the Court accepts Plaintiff's factual allegations as true. *See Leib v. Hillsborough County Public Transp. Com'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

1

asked to come to the front office, escorted to the break room, and instructed to clock out and leave. Doc. 5 at 1. Roper explains that at the time she was asked to leave work, she was awaiting surgery on her hand because of a tumor. *Id.* She claims she had been working at Purdue Farms with this condition for "about 2-3 months." *Id.* at 2. She typically worked five to six shifts per week in various areas, including "the elevator, creates [sic], and feeding the line." *Id.* at 4. There were times when she needed assistance working "with the creates [sic]" because of her "hand impairment." *Id.* at 4. According to Roper, her hand condition caused her "extreme pain" when she "tried to pack." *Id.* at 4-5.

Sometime "[d]uring the month of August 2018," she was called to the officer by her supervisor and instructed to clock out because she "couldn't pack." Doc. 5 at 4; *see also id.* at 2 (allegation that Roper's supervisor told her she "would have to go" if she could not work in the "packing area."). The next day, Roper reported to someone in the human resources department who instructed her to talk to her supervisor "because Perdue [F]arms give[s] accommodation[ ]s all the time" and "it should not be a problem for [her] to get an accommodation." *Id.* at 5. After that, Roper spoke with "Mr. Eli" who said that "it was up to him"

whether she got an accommodation, and "his answer was No." *Id.* She told him that she only needed an accommodation until her surgery, after which she could return to work. *Id.*; *see also id.* at 2.

Roper alleges that after her meeting with "Mr. Eli," a nurse "Ms. Simmons" asked her to sign a statement that she had no restriction, and that she would be responsible if she returned to work, "not the company." Doc. 5 at 3; *see also id.* at 6 (referring to a "Nurse Ms. Simon"). Roper refused, since "the statement was untrue." *Id.* The nurse then asked Roper to bring in a doctor's note by the next day, which Roper indicated to her was "impossible" because she would need an appointment "to get more information." *Id.* at 6. She claims that she "was not given adequate time to get any additional information [or] documentation from the doctor who was performing the surgery." *Id.* at 3. Because the doctor did not respond until two weeks later, she could not respond within the one-day time provided by the nurse. *Id.* Roper claims that she "was fired because [she] did not sign the statement written by Ms. Simmons, the nurse." *Id.*

Roper contrasts her situation with others who were "moved from their current position . . . due to age, performance, and strength and needs." Doc. 5 at 3; *see also id.* at 5 (discussing other employees who were

3

"transferred or changed because they couldn't perform the job they were hired for, or more achievable, some [were] placed based on their age, and some were demoted from general labor to housekeeper, cleaning, box room, and palletizing.") She also claims that she "never packed," and that she "always worked in other areas" where she performed "over and beyond [her] production." *Id.* at 5-6.

Roper feels she has been "treated unfavorably because of [her] disability, and age." Doc. 5 at 4. She also claims she "was retaliated against, because [she] was fired, without cause." *Id.* at 6. She contends that the "grounds" she has been "violated against by employee [sic] of Perdue [F]arms" are employment discrimination, disability discrimination, and retaliation. *Id.* at 6-7. She reported her disability discrimination claim and retaliation claim to the Equal Employment Opportunity Commission who issued her a Dismissal and Notice of Rights on June 21, 2019. She filed her initial Complaint on September 13, 2019. *See* doc. 1.

## II. ANALYSIS

Because she is proceeding IFP, Plaintiff's complaint must be screened. A *pro se* litigant's pleadings are held to a more lenient standard

than those drafted by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff's complaint, therefore, is liberally construed, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but must be dismissed if it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). "Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6)." *Wilkerson v. H & S, Inc.*, 366 F. App'x 49, 51 (11th Cir. 2010) (citing *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997)).

To state a claim upon which relief can be granted, the allegations of the complaint must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. While Rule 8(a) of the Federal Rules of Civil Procedure does not require detailed factual allegations, "it demands more than an unadorned, the defendant

5

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (*quoting Twombly*, 550 U.S. at 555, 557).  In short, the complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

Liberally construed, Plaintiff's allegation that she was "treated unfairly because of [her] disability and age," *see* doc. 5 at 4, implicates the Americans with Disabilities Act (ADA) and the Age Discrimination in Employment Act of 1967 (ADEA).  The ADA prohibits discrimination by employers "on the basis of disability," 42 U.S.C. § 12112(a), while the ADEA prohibits an employer from taking adverse action against an employee "because of such individual's age," 29 U.S.C. § 623(a).  She also raises a claim of retaliation under the ADA.  Doc. 5 at 7.

**A.   ADA Claims**

To state a claim of discrimination under the ADA, a plaintiff must allege that, at the time of the adverse action, she was (1) disabled, (2) qualified for the position, and (3) subjected to unlawful discrimination

because of her disability. *See Mazzeo v. Color Resolutions Intern., LLC*, 746 F.3d 1264, 1268 (11th Cir. 2014). A person is "disabled" under the ADA in three different ways: (1) if she "has a physical or mental impairment that substantially limits one or more ... major life activities"; (2) if she has a record of such an impairment; or (3) if she is "regarded as" having such an impairment. 42 U.S.C. § 12102(1). One "major life activity" is working. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226-27 (11th Cir. 2005).

Roper alleges that her tumor caused her "extreme pain" when she tried to perform some of her job duties, including packing. Doc. 5 at 5. She also alleges that she required assistance with another job duty. *Id.* at 4. However, she also alleges that she was able to work, apparently without assistance or pain, in several other areas. *Id.* at 4-5. "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *D'Angelo*, 422 F.3d at 1227. Roper's allegations fall short of alleging disability, since they do not speak to any other limitations that might be considered substantial.

7

However, Roper may also qualify as disabled if she was treated by her employer as if her condition constituted such a substantial limitation. *D'Angelo*, 422 F.3d at 1228. As the Eleventh Circuit discussed in *D'Angelo*:

> The Supreme Court has explained that "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 521–22 . . . (1999); *see also Hilburn v. Murata Elecs. N. Am.*, 181 F.3d 1220, 1230 (11th Cir.1999) ("As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual."). Thus, "[a]n employer runs afoul of the ADA when it makes an employment decision based on a physical or mental impairment, real or imagined, that is regarded as substantially limiting a major life activity." *Sutton*, 527 U.S. at 490 . . . .

*Id.* Roper's description of her conversation with "Mr. Eli," where he allegedly told her that he "could not wait on [her] forever" because she has a "condition," doc. 5 at 5, is sufficient at the screening stage for the Court to "draw the reasonable inference" that her employer regarded her condition as more limiting than her allegations support. *Iqbal*, 556 U.S. at 678.

Plaintiff must also plead facts to show that she was qualified for the position, and that she was discriminated against because of her

8

disability. A "qualified individual" is someone with a disability who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). An employer's failure to make reasonable accommodation for an otherwise qualified disabled employee constitutes discrimination under the ADA. *D'Angelo*, 422 F.3d at 1225-26; *see also Anderson v. Embarq/Spirit*, 379 F. App'x. 924, 927 (11th Cir. 2010) ("An employer impermissibly discriminates against a qualified individual when the employer does not reasonably accommodate the individual's disability." (citing 42 U.S.C. § 12112(b)(5)(A))).

Plaintiff's allegations, which are taken as true at this point in the proceedings, are enough to state a claim that she was qualified, and that she was denied an accommodation. *See* doc. 5 at 4-6. She claims that during her tenure at Perdue Farms she "never packed," and that she always worked her shift, "and the other shift as well," in other areas of the facility instead. *Id.* at 4-6. She claims that her work in these other areas was "excellent." *Id.* at 2. She also alleges that, although others with limitations were permitted to work in other areas, she was not. *Id.* at 5. While Plaintiff's allegations are not clear as to whether packing was

one of the "essential functions" of her position, her allegation that, in the months leading up to her termination, she "never packed" and instead worked in other areas of the facility are sufficient, at this point, for the Court to infer that, perhaps, it was not. Her allegation that "Mr. Eli" expressly denied her an accommodation, without explanation, is also sufficient at this stage. Plaintiff has provided enough factual allegations, given the liberal construction afforded to *pro se* pleadings, to state a claim for discrimination by her employer in violation of the ADA.

B. **ADEA Claims**

Plaintiff's ADEA claim, however, does not pass muster. "In order to make out a *prima facie* case for an ADEA violation, the plaintiff may show that she (1) was a member of the protected age group, (2) was subject to adverse employment action, (3) was qualified to do the job, [cit.], and (4) was replaced by a younger individual, or that her employer treated employees who were not members of her protected class more favorably under similar circumstances." *Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749, 751 (11th Cir. 2014) (citations omitted). To state a claim under the ADEA, then, plaintiff must first allege that she was a member of the protected age group, which is "at least 40 years of

age." 29 U.S.C. § 631(a). Plaintiff's Amended Complaint is silent about her age. *See generally* doc. 5. She also does not allege that she was replaced by someone younger. *Id.* While this defect might be amendable, her claim suffers from another, fatal defect. *See Jenkins v. Minton*, 2020 WL 975021, at *2 (S.D. Ga. Jan. 9, 2020) (citing *Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015)) ("A pro se plaintiff is generally granted at least one opportunity to amend a complaint."); *Sifford v. Ford*, 701 F. App'x 794, 796 (11th Cir. 2017) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)) ("However, a district court need not allow even a pro se plaintiff leave to amend where amendment would be futile.").

Before filing suit under the ADEA, a plaintiff must exhaust the available administrative remedies by filing a charge with the EEOC. *See* 29 U.S.C. § 626(d) (stating plaintiff must file age discrimination charge within 180 days after the alleged discrimination); *see also Anderson*, 379 F. App'x at 926. According to the Eleventh Circuit, claims of discrimination other than those in the EEOC Charge "are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint." *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d 1277, 1279–80 (11th Cir.2004) (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547

(11th Cir.1989)). Even so, the Eleventh Circuit has advised against a strict interpretation of the EEOC Charge scope, noting instead that courts are " 'extremely reluctant to allow procedural technicalities to bar claims . . .'" *Id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–61 (5th Cir.1970)).

Plaintiff's EEOC Charge, which she apparently filed with the assistance of counsel, *see* doc. 5 at 14, only refers to her claim of disability discrimination and retaliation in violation of the ADA. *See id.* at 11. The "Statement of Harm" includes reference to her alleged disability, and the company's failure to accommodate that condition. *Id.* She did not include any reference to any alleged age discrimination. *Id.* The Charge does not reference her age at all. *Id.* A claim of age discrimination in violation of the ADEA does not "amplify, clarify, or more clearly focus" a claim of disability discrimination or retaliation. *See Gregory*, 355 F.3d at 1279-80. The facts alleged in the EEOC charge confine this Court's analysis to discrimination based on an alleged disability, and retaliation. Even a lenient interpretation of the facts presented in the Charge foreclose Plaintiff's ADEA claim. It should be **DISMISSED**.

### C.   Retaliation

Plaintiff has adequately pleaded a claim of retaliation.  In order to state a prima facie claim of retaliation under the ADA, plaintiff must allege that "(1) she engaged in a statutorily protected expression, (2) she suffered an adverse employment action, and (3) there was a causal link between the two." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).  Though not expressly stated by plaintiff, in seeking an accommodation for a perceived disability, she engaged in a protected act. *See id.* ("The [protected expression] element may be met by a request for a reasonable accommodation.").  She has alleged an adverse employment action in being terminated from her position.  Doc. 5 at 6; *see also Santandreu v. Miami Dade Cnty.*, 513 F. App'x. 902, 906 (11th Cir. 2013) (For purposes of a retaliation claim, "[a]n adverse employment action is any act by the employer that dissuades a reasonable employee from engaging in the protected activity.").  *Cf. Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1448 (11th Cir. 1998) ("Where a plaintiff has allegedly suffered termination . . . a court normally has no cause to consider its standard for adversity . . . .").

Plaintiff's allegations about her conversation with "Mr. Eli," and the relatively short period of time between the request for accommodation and the retaliatory act, sufficiently suggest a causal link, at least for pleading purposes. To demonstrate causation between the protected activity and the adverse employment action, a plaintiff must allege that (1) "the decision-maker was aware of the protected conduct"; and (2) "the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (alteration in original) (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999)), *abrogated on other grounds as recognized by Crawford v. Carroll*, 529 F.3d 961, 973–74 (11th Cir. 2008). Perdue Farms was unquestionably aware of the request for accommodation as plaintiff alleges she asked "Mr. Eli" directly, and he informed her that the decision was "up to him." Doc. 5 at 5. "Mr. Eli's" alleged comments also support a connection between the protected act and the retaliatory conduct. *Id.* That the alleged retaliation occurred shortly following her request for accommodation also evidences a causal connection. *See Farley*, 197 F.3d at 1337 ("a plaintiff satisfies [the causal connection] element if he provides sufficient evidence that the decision-

maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."). Plaintiff's retaliation claim survives screening.

### III. SERVICE

Because Roper is proceeding *in forma pauperis*, she is entitled to service by the United States Marshal. *See* Fed. R. Civ. P. 4(c)(3). The address that Roper has supplied for Perdue Farms is found on her EEOC Charge. *See* doc. 5 at 11; *see also* doc. 1 at 2. That address is:

> Perdue Farms
> 101 Progress Drive
> Rincon, Georgia 31326.

*See* doc. 5 at 11. While it is not the Court's job to identify the appropriate defendant to serve, *cf. Lindsey v. U.S. R.R. Retirement Bd.*, 101 F.3d 444, 447 (5th Cir. 1996) (noting that it is the IFP plaintiff's job, at a minimum, to request service upon the appropriate defendant), for the benefit of the

15

Clerk and the United States Marshal, the Court notes that the registered agent for Perdue Farms appears to be:[3]

> CT Corporation System
> 289 S. Culver Street
> Lawrenceville, Georgia 30046-4805

The Clerk is **DIRECTED** to prepare a service waiver package for the defendant to be sent to both addresses:

| | |
|---|---|
| Perdue Farms | Perdue Farms |
| 101 Progress Drive | c/o CT Corporation System |
| Rincon, Georgia 31326 | 289 S. Culver Street |
| | Lawrenceville, Georgia 30046-4805 |

That package must include: a Rule 4 Notice of Lawsuit and Request to Waive Service of Summons (prepared by the Clerk); two copies of the Waiver of the Service of Summons form (prepared by the Clerk); an envelope addressed to the Clerk of Court with adequate first-class postage for use by the defendant for return of the waiver form; copies of the Complaint, doc. 1, the Amended Complaint, doc. 5, the Court's prior Order, doc. 4, and this Order.

---

[3] See Georgia Secretary of State, Corporations Division, https://ecorp.sos.ga.gov/businesssearch/BusinessInformation?businessId=1821556&businessType=Foreign%20Profit%20Corporation&fromSearch=True.

Next, the Clerk shall mail the service waiver package to the defendant at the above addresses. The defendant is under a duty to avoid unnecessary costs of personally serving the summons. If it fails to comply with the mailed request for waiver of service, it must bear the costs of personal service, unless good cause can be shown for failure to return the Waiver of Service form. *See* Fed. R. Civ. P. 4(d)(2). Should defendant fail to waive service within sixty days following the date the service waiver package is mailed (the Clerk shall docket that act), the Clerk will prepare and transmit a service package to the Marshal. The service package must include a fully completed USM 285 form, the summons, one copy of the Complaint, doc. 1, the Amended Complaint, doc. 5, the Court's prior Order, doc. 4, and this Order. Upon receipt of the service package, the Marshal is **DIRECTED** to use reasonable measures to promptly attempt to personally serve the defendant.

## IV. CONCLUSION

Plaintiff's disability discrimination and retaliation claims may proceed. Plaintiff's claim for violation of the ADEA should be **DIMISSED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 25th day of April, 2022.

_____
C<small>HRISTOPHER</small> L. R<small>AY</small>
U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
S<small>OUTHERN</small> D<small>ISTRICT OF</small> G<small>EORGIA</small>